467 P.2d 981

**J. Wendell MARRIOT, Administrator of the Estate of Russell L. Marriot, Deceased, Plaintiff and Appellant,**

**v.**

**PACIFIC NATIONAL LIFE ASSURANCE COMPANY et al., Defendants and Respondents.**

**No. 11879.**

Supreme Court of Utah.

April 8, 1970.

---

1. Section 35–1–12, U.C.A.1953.

Arden E. Coombs, Ogden, for appellant.

P. Knute Peterson, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

Plaintiff as administrator for Russell L. Marriot sues to recover $2000 life and $2000 accidental death benefit insurance under a group insurance program furnished by Pacific National Life Assurance Company covering employees of Skyline Construction Co., Inc., for whom Mr. Marriot was working as an operating engineer when he was killed by contact with a high-

voltage line on September 17, 1964. There is no question involved here as to who was at fault in the cause of his death, nor as to the right of his dependents to receive workmen's compensation benefits provided by law.[1] The sole issue is whether he had qualified and was thus also covered under the company's group insurance program. The trial court granted defendant's motion for summary judgment. Plaintiff appeals. There being no disputed issues of fact, the question we confront is whether defendant was entitled to judgment as a matter of law.[2]

The eligibility of employees under the group insurance program was set forth in a "Certificate of Coverage" issued to the employees together with an affixed booklet explaining the conditions of coverage. These documents contained the contract of insurance which in pertinent parts provided:

> The insurance benefits * * * are effective only if the person is eligible * * * [and] * * * becomes insured * * * in accordance with the provisions of the policies.
>
> * * * * * *
>
> * * * an *employee must work at least 300 hours* in a period of three or less consecutive calendar months. Each employee who meets this requirement * * * *shall first become insured on the first of the second calendar month* next following such period.

Mr. Marriot had completed the required 300 hours, having worked 198 hours in August and 104 hours in September prior to his death. Therefore if he had lived he would have been insured on the "first of the second calendar month" after completing those hours, which would have been November 1, 1964. The defendant's position, adopted by the trial court, is that because his death occurred on September 17, 1964, the period for his eligibility was never completed, and the insurance never went into effect.

In opposition to that position the plaintiff places reliance on another provision of the insurance plan which states:

> * * * if you *become disabled while actively at work* between the date on which you complete the necessary hours for eligibility [300 hours] and the date your eligibility actually begins [November 1, 1964] *your insurance will take effect* as indicated above.

He makes these arguments: that everything required to be done by the decedent

---

1. See Sec. 35–1–45, U.C.A.1953: "Every employee * * * and the dependents of every such employee who is killed, by accident arising out of or in the course of his employment, * * * shall be entitled to receive, * * * compensa-tion * * * as is herein provided." And see Sec. 35–1–68, U.C.A.1953, which sets out the formula to determine the amount to be paid to dependents.

2. See Auto Lease Co. v. Central Mutual Ins. Co., 7 Utah 2d 336, 325 P.2d 264.

had been done (except only lapse of time); that if he had survived, even in a coma, until November 1, he would have been insured, without further payment of premiums, or anything else being done which would benefit the company. Wherefore, plaintiff avers, the delayed effective date was but a condition subsequent, not necessary to be fulfilled in order to make the insurance contract binding.[3] Correlated to and supportive of this, he further urges that the above quoted provision, that if the decedent became "disabled while actively at work" the insurance would nevertheless take effect, constituted a waiver of any further duties upon his part; and that, in any event, he was in fact literally "disabled" from further work when he was killed and therefore should be deemed covered.

In regard to the plaintiff's position there are some general observations with which we acknowledge agreement. While it is true that insurance is a matter of contract, it is to be recognized that the parties are not usually in an equal bargaining position, but rather are in a situation where one side with all of the expertise, can fashion the contract to its own interests. It often makes representations of insurance which it holds out to the customer, but which are explained in numerous paragraphs of fine print, many of which are found to be conditions and exceptions limiting the coverage. We entirely agree that courts should not give support to such methods and thus enable insurance companies to hold out expectations of coverage with one hand and take them away with the other by setting forth a promise in one part of the contract and then taking it away somewhere else;[4] nor should they be permitted to avoid liability for promised coverage by relying upon technical requirements not material to the risk involved.[5]

Notwithstanding our accord with the propositions just stated, we do not see them as applying in the circumstances shown here to provide a basis for plaintiff's recovery. Bearing upon that problem it is also to be borne in mind that inasmuch as insurance coverage is based on contract, unless there is some good reason

3. That there could be no true "condition subsequent" here see 17A C.J.S. Contracts § 339, p. 323; 17 Am.Jur.2d 756.

4. See Seal v. Tayco, Inc., 16 Utah 2d 323, 400 P.2d 503; and see also Christensen v. Lelis Automatic Transmission Service, Inc., 24 Utah 2d 165, 467 P.2d 605.

5. See Parker v. California State Life Ins. Co., 85 Utah 595, 40 P.2d 175, wherein

this court stated: "When the insured in this case had fully complied with every requirement made by the defendant as a condition of reinstatement, leaving nothing but the formal approval of the company, the mere fact that he died from causes that in no way affected his insurability did not affect his right to have the company approve the application to reinstate." See also Palmer, et al. v. Broadbent, et al., 123 Utah 580, 260 P.2d 581.

to the contrary,[6] we are obliged to assume that language included therein was put there for a purpose, and to give it effect where its meaning is clear and unambiguous.[7]

■ The insurance in question was not with an individual, but was group insurance for employees of a number of qualifying employers. It does not seem unreasonable that there be some rules as to eligibility so that coverage would be only upon the regular employees of the work force and eliminate those who may be merely temporary, or job-hopping; or even to prevent someone who may be otherwise uninsurable from deviously slipping into such an insurance program. It seems quite likely that this was a factor prompting the requirement of 300 hours' work and a waiting period until the first day of the second calendar month thereafter before the insurance went into effect. The provision does not impress us as being so inconsistent or contradictory to the representations of the insurance coverage as to render it unenforceable.

■ We are appreciative of the ingenuity of plaintiff's argument that when decedent was killed he was in one sense "disabled" in that he was "not able" to continue work, and thus the insurance should become effective at the end of the waiting period. However, in insurance, as in other contracts, it is proper to look to the ordinary usage and connotations of words to determine the meaning intended. The apparent purpose of the provision relied upon by the plaintiff is to assure the employee who qualifies by completing 300 hours of work that even if he becomes disabled and cannot continue working during the waiting period, his insurance will nevertheless become effective, so he will not be compelled to commence the qualification process over again. We think that in the frame of reference in which the term "disabled" is thus used it means something quite different from being "killed" and thus having one's life terminated entirely;[8] and that to accept plaintiff's argument that the term "disabled" should include one who is killed, would require a hypertechnical distortion of language not in accordance with the meaning intended in the insurance contract. (All emphasis added.)

The judgment is affirmed. Costs to defendant (respondent).

CALLISTER, TUCKETT, HENRIOD, and ELLETT, JJ., concur.

6. E. g., such as considerations of public policy, illegality, or unconscionability; and see footnotes 3 and 4 above.

7. Jones v. New York Life Ins. Co., 69 Utah 172, 253 P. 200.

8. See Paul v. Fidelity and Casualty Co. of New York, Mo.App., 34 S.W.2d 978, and cases cited therein. See also Aleksich v. Mutual Benefit Health & Accident Ass'n, 118 Mont. 223, 164 P.2d 372.