ST. PAUL FIRE AND MARINE INSUR-ANCE, Plaintiff and Appellant,

v.

COMMERCIAL UNION ASSURANCE, Defendant and Respondent.

No. 16080.

Supreme Court of Utah.

Feb. 8, 1980.

---

**2.** 29 Utah 2d 101, 505 P.2d 783 (1972).

**3.** Id. at 787.

Rex J. Hanson of Hanson, Russon, Hanson & Dunn, Salt Lake City, for plaintiff and appellant.

B. L. Dart, Jr., and John D. Parken of Jerman & Dart, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

This declaratory judgment action was brought to determine the extent of liability incurred by Plaintiff St. Paul Fire and Marine Insurance Company (hereafter "St. Paul") and Defendant Commercial Union Insurance Company (hereafter "Commercial Union") arising out of the death of an employee of the DeBernardi Brothers, Inc., a construction company (hereafter "DeBernardi"). DeBernardi was insured by both plaintiff and defendant under policies sold to it in Wyoming. Each party also sought a declaration that the coverage afforded by the policy of the other was primary coverage.

Based on stipulated facts, the District Court granted Commercial Union's Motion for Summary Judgment and denied St. Paul's Motion for Summary Judgment, and further adjudged that the policy issued by St. Paul provided primary coverage whereas that of Commercial Union provided excess coverage.

A summary of the stipulated facts upon which the District Court based its decision follows: DeBernardi had contracted to supply cement for the construction of a swimming pool in Rock Springs, Wyoming. Under its contract, DeBernardi delivered the cement to the job site in its ready-mix trucks. The cement was poured into a hopper and then pumped, using DeBernardi's pumping unit, into the formwork for the swimming pool, which had been previously installed. The cement-pumping unit had its own engine and was not connected to the engine of the truck. The ready-mix driver controlled the flow of the cement into the hopper, and the cement pump operator directed the boom of the pump truck.

The pumping unit was equipped with four hydraulically controlled outriggers used to stabilize the truck and pumping unit during operation. Both the truck and pump operators were DeBernardi employees.

On February 18, 1976, Thomas Edward Moore was killed on the construction project when the boom of the pumping unit collapsed and knocked him off the forms being filled with cement. The deceased's heirs brought suit for wrongful death in Wyoming against DeBernardi, who thereafter notified St. Paul of the action.

At the time of the accident, DeBernardi was insured by St. Paul under the terms of a commercial automobile liability policy and by Commercial Union under the terms of a comprehensive general liability policy. The truck and pumping unit involved in the accident were specifically insured under an endorsement to the St. Paul policy. When

St. Paul received notice of the wrongful death action, it answered on behalf of De-Bernardi and then tendered the defense of that suit to Commercial Union. The tender was refused, and this action was subsequently brought.

On appeal, St. Paul maintains that the District Court in awarding judgment to Commercial Union must have concluded that the truck-cement pump combination was an "automobile" and not "mobile equipment" as those terms are defined in the policy written by St. Paul. Under that policy, an "automobile" is covered by liability insurance but "mobile equipment" is not.

In our view, however, the dispositive issue here is the effect of the plain language of an endorsement to the contract of insurance written by St. Paul rather than the definition of "automobile" and "mobile equipment".[1]

██ As a general rule:

endorsements, riders, marginal references, and other writings which constitute a part of the contract of insurance are to be read and construed with the policy proper.[2]

An "All Purpose Automobile Endorsement" is part of the basic St. Paul policy. That endorsement provides in pertinent part:

It is agreed that the policy is amended as shown below . ·. .

Automobile Added-Insurance applies to the automobile described below.

1968 Mack Truck W/Thomsen concrete pump # 74853

██ This endorsement, dated September 22, 1975, by its terms identifies the vehicle in question as being an "automobile". Unless there is some ambiguity or uncertainty in the language of an insurance policy, the policy should be enforced according to its terms.[3] There being no ambiguity in the terms of the endorsement, the inclusion of the vehicle in question as an "automobile" under the St. Paul policy is binding on St. Paul.

We do not agree with plaintiff that under the basic policy and endorsement the vehicle in question could at times be treated as an "automobile" and at other times be treated as "mobile equipment". Had it been the intention of the parties that the vehicle could at times be considered an "automobile" and at times "mobile equipment" that intention could have been easily and clearly expressed. Here the endorsement clearly identifies the vehicle in question as being an "automobile" and it therefore was covered by the policy issued to DeBernardi by St. Paul.

Affirmed. Costs to defendant.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.

---

1. St. Paul argues that because both contracts of insurance involved here were entered into in Wyoming and because the incident giving rise to liability occurred in Wyoming, this Court should apply Wyoming law to determine the nature of the vehicle involved. St. Paul then cites the Wyoming case of *State Farm Mutual Automobile Ins. Co. v. Farmer's Insurance Group*, Wyo., 569 P.2d 1260 (1977) as controlling. We perceive, however, no conflict of laws issue which necessitates a decision on choice of law. So far as we have been able to determine there is no conflict between the law of Wyoming and that of Utah on the controlling issue noted above. That precise issue has not been directly decided in either jurisdiction. Based

on other cases, however, such as those holding that the words used in a contract of insurance will be given their usual and ordinary meaning absent evidence of a contrary intent of the parties thereto, we conclude there is no conflict. *See*, e. g., *Bergera v. Ideal National Life Insurance Company*, Utah, 524 P.2d 599 (1974) and *McKay v. Equitable Life Assurance Society of U. S.*, Wyo., 421 P.2d 166 (1966).

2. 1 Couch on Insurance 2d, Sec. 15:30.

3. *American Casualty Company of Redding, Pennsylvania v. Eagle Star Insurance Company, Ltd.*, Utah, 568 P.2d 731 (1977).